UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10300-GAO

**UNITED STATES OF AMERICA**

v.

**CRANDALL RACK**

**MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION**

**NOVEMBER 23, 2004**

**BOWLER, Ch.U.S.M.J.**

On or about September 30, 2004, defendant Crandall Rack (the "defendant"), was arrested pursuant to a two count Indictment returned in this district on September 29, 2004. Count One of Indictment charges the defendant with possession of cocaine base with intent to distribute in violation of 21, United States Code, Section 841(a)(1) and Count Two charges possession of a firearm during a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A).

The defendant had his initial appearance before this court on September 30, 2004. He was represented by retained counsel.

1

The government moved to detain the defendant on the grounds that there is no condition or combination of conditions that will reasonably assure (1) the safety of any other person and the community and (2) the appearance of the defendant.  18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A).  The government moved for a three day continuance and a detention hearing was scheduled before this court on October 5, 2004.

On that date this court conducted a hearing on the issue of detention.  The defendant was represented by retained counsel.  The government called one witness speaking to the issue of detention.  The defendant called one witness.  This court took the issue of detention under advisement.

## DISCUSSION

I.   A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f).  See 18 U.S.C. § 3142(a).

Under 18 U.S.C. § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by <u>clear and</u>

<u>convincing</u> evidence, after a detention hearing under the provisions of § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . .;" (2) by <u>a preponderance of</u> the evidence, after a detention hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no condition or combination of conditions (set forth under 18 U.S.C. § 3142(b) or (c)) will reasonably assure the appearance of the person as required . . .;" or (3) there is a serious risk the defendant will flee.[1]  This determination is made by the court at the conclusion of a detention hearing.

  B. The government is entitled to move for detention in a case that:

  (1) involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);[2]

---

[1] The distinction between the former and the latter are made clear by the very language of 18 U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be <u>clear and convincing</u> evidence to authorize pretrial detention when the question is whether any condition or combination of conditions "will reasonably assure the <u>safety of any other person and the community</u> . . .."  (Latter emphasis added.)  By not requiring that same standard <u>vis</u> <u>a</u> <u>vis</u> an assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--applied.  That is precisely the holding in the Second Circuit.  <u>See</u> e.g., United States v. Jackson, 823 F.2d, 5 (D.C.Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. 1986); <u>see</u> <u>also</u> United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991).

[2] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
  (A) an offense that has as an element of the offense the use, attempted

(2) involves an offense punishable by death or life imprisonment;

(3) involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[3] or

(4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or threats to potential witnesses. <u>See</u> 18 U.S.C. § 3142(f).

---

use, or threatened use of physical force against the person or property of another, or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

[3] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. <u>See</u> <u>United States v. Moss</u>, 887 F.2d 333, 336-7 (1st Cir. 1989).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including--
>
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

D.  The burden of persuasion remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  The burden

then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of the evidence and with respect to dangerousness by clear and convincing evidence. <u>See</u> <u>supra</u> footnote 3. This court must then weigh all relevant factors [set forth under § 3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. <u>United States v. Patriarca</u>, 948 F.2d 789, 794 ( Cir. 1991); <u>see</u> <u>United States v. Jessup</u>, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in <u>physical violence</u>. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community." The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual,

>           perhaps a victim or witness, is of
>           concern, while the language referring
>           to the safety of the community refers
>           to the danger <u>that the defendant might
>           engage in criminal activity to the
>           detriment of the community</u>.  The
>           Committee intends that the concern about
>           safety be given a broader construction
>           than merely danger of harm involving
>           physical violence....  The Committee
>           also <u>emphasizes</u> that the risk that a
>           defendant will <u>continue to engage</u> in
>           drug trafficking constitutes a danger to
>           the "safety of any other person or the
>           community."

<u>Id.</u> (Emphasis added; footnotes omitted); <u>see</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792 n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); <u>see also</u> <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); <u>United States v. Hawkins</u>, 617 F.2d 59 (5th Cir. 1980), (trafficking in controlled substances).[4]

The issue critical to determining whether to detain a defendant is therefore, whether, with respect to the defendant, based on the guidelines set forth <u>supra</u> in part C of this Order, any condition or combination of conditions of release exist that will reasonably assure the safety of any person and the community and the presence of the defendant.  18 U.S.C. § 3142(e).

---

[4] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section.  See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

E.  "Where, as here, a defendant is charged with a controlled substance offense punishable by a maximum term of 10 years or more, the government is aided by § 3142(e)'s rebuttable flight presumption."[5] <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  The presumption is not limited to risk of flight.  Rather, the presumption has two components.  One component is that the person poses a risk of flight and the second component is that the person "represents a danger to the community."  <u>United States v. Moss</u>, 887 F.2d 333, 335 n.3 (1st Cir. 1989) (per curiam).

Thus, under section 3142(e) the judicial officer must consider the rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act <u>or</u> an offense under 18 U.S.C. § 924(c), the use of a firearm to commit a felony.  18 U.S.C. § 3142(e).

---

[5] The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries. <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam).  Consequently, imposing "a large bond is often ineffective in deterring flight." <u>United States v. Perez-Franco</u>, 839 F.2d 867, 869-70 (1st Cir. 1988).

The presumption raised as a result of finding probable cause that a defendant committed the relevant narcotics offense is always entitled to evidentiary weight, the amount of which, if at all, depends on the nature of the production by the defendant and the other factors set forth under § 3142(g). The defendant, however, "bears only the burden of production." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988). As explained by the United States Court of Appeals with regard to the statutory presumption of section 3142(e):

> Section 3142(e), however, only imposes a burden of production on a defendant. The burden of persuasion remains with the government. Nevertheless, even after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but retains evidentiary weight--the amount depending on how closely defendant's case resembles the congressional paradigm, Jessup, 757 F.2d at 387--to be considered along with other factors.

United States v. Palmer-Contreras, 835 F.2d at 17-18; see also United States v. Perez-Franco, 839 F.2d at 869-70.

Finally, it is important to note that the presumption is triggered by the statutory penalty prescribed irrespective of the actual or likely sentence imposed upon the particular defendant. See United States v. Moss, 887 F.2d 333, 337 (1st Cir. 1989) (per curiam). The fact that a defendant may receive a sentence of less than ten years does not make the presumption inapplicable. Id. at 337. Rather, this court may consider such a factor with regard to the weight this court gives to the presumption. Id. at

9

337.

F. Further, the judicial officer must consider whether the crime charged is a "crime of violence" within the meaning of 18 U.S.C. § 3156 where the government has raised 18 U.S.C. § 3142(f)(1)(A) as a basis for pretrial detention. Thus, where the government moves for pretrial detention "on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1)," United States v. Ploof, 851 F.2d 7, 11 (1st Cir. 1988), which, in this instance, involves the circumstance of whether the offense in the case at bar is a "crime of violence" under § 3142(f)(1)(A).

Cases establish that the circumstances in which a defendant committed a particular offense do not determine whether the crime of which the defendant is accused is a "crime of violence" as defined in 18 U.S.C. § 3156(a)(4). Rather, this court must categorically examine the nature of the offense to determine whether it is or is not a "crime of violence" within the meaning of 18 U.S.C. § 3142(f)(1)(A). See United States v. Johnson, 704 F.Supp. 1398, 1400 (E.D. Mich. 1988) (recognizing that each "generic offense must be categorized as either a 'crime of violence' or not a crime of violence" under Bail Reform Act); see also United States v. Bell, 966 F.2d 703, 706 (1st Cir. 1992) (adopting categorical approach to assess whether offense is "crime of violence" under sentencing guidelines).

The Bail Reform Act's definition of the term "crime of violence" is twofold.  An offense is a "crime of violence" if it is:

> (A) an offense that has as an element of the offense the use, or attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

The sentencing guidelines define the term "crime of violence" in a manner which is similar to the definition of the term in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B).[6]

This court finds that the offense charged in Count Two of the Indictment constitutes a "crime of violence" within the meaning of the Bail Reform Act, 18 U.S.C. § 3142(f)(1)(A).

II.  The defendant, Crandall Rack, is 24 years of age.  He was born in Boston on May 28, 1980.  In 1998 he graduated from Cathedral High School in Boston, where he has been a lifelong

---

[6] The sentencing guidelines define a "crime of violence" as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.C.A. § 4B1.2(1) (emphasis added).

11

resident.

At the time of his arrest the defendant was residing at 20 Warwick Street in Roxbury with his mother, a career social worker employed by Mass Health, and her fiancé, who is a detective in the Boston Police Department.  The defendant is an only child.  He reports little contact with his father who resides in Dorchester.  The defendant told Pretrial Services that his girlfriend, Jada West, has been residing at his mother's Roxbury residence for the last six months.

According to the Pretrial Services report, at the time of his arrest the defendant was working for A T & T/Varitek Telecom selling long distance service as a door-to-door salesperson.  His previous employment includes working as a delivery person for a restaurant supply company, a driver for the Hood Company, a parking attendant (seasonal) and for UPS during the holiday season.

The defendant's only asset in an unregistered 1991 Olds Cutlass Supreme which he values at $1,000.  He owes approximately $2,000 in credit card debt.

The defendant's prior criminal history includes a conviction in 2002 for having a controlled substance in a school zone and possession with intent to distribute a Class D controlled substance.  He was sentenced to probation.

In April of 2004 the defendant was charged in the Boston

Municipal Court with possession of a firearm without a permit, possession of a defaced firearm, failure to have a Firearms Identification card, possession of a Class D controlled substance, assault with a dangerous weapon and assault and battery.  These charges have been continued until December 15, 2004.

In June of 2004 the defendant was charged in the Boston Municipal Court with possession of Mace without a Firearms Identification Card, possession of a firearm with a defaced serial number, possession of a firearm without a permit, possession with intent to distribute a Class B controlled substance and distributing/dispensing a Class B controlled substance.[7]  These charges remain outstanding.

III.  The relevant evidence at the detention hearing showed the following.

The government called Special Agent Lisa Rudnicki ("Rudnicki") of the Bureau of Alcohol, Tobacco and Firearms ("ATF") of the United States Department of the Treasury.  She testified that she has been employed by ATF as a special agent for over eight years.  She stated that she is presently assigned to Boston Group II, which works with the Boston Police Department

---

[7] It appears that these charges arise from the same circumstances giving rise to the federal charges pending before this court.

("BPD") and focuses on the apprehension of individuals illegally possession firearms in the city of Boston. Rudnicki noted that she has received specialized firearms training.

Rudnicki testified that a member of the BPD informed her regarding an incident that occurred on June 21, 2004 in the area the Ruggles MBTA station in Roxbury. Rudnicki explained that an individual later identified as the defendant was waiting near the entrance to the T stop. The defendant motioned to Kenneth Cowans ("Cowans"), who passed paper money to the defendant in exchange for something from the defendant. Rudnicki stated that it appeared to be a drug transaction to officers observing the situation.

The officers approached Cowans, who immediately spit two packages out of his mouth. The contents appeared to be crack cocaine. As the officers approached the defendant, who appeared to be holding his waist area, he walked away. Then the defendant began to run in the direction of Northeastern University.

While he was running the defendant threw a loaded .380 caliber Bryco semiautomatic pistol and a clear plastic bag from his person. After a chase the defendant was found hiding under a motor vehicle on the second floor of a garage.

Rudnicki noted that an analysis of the contents of the bag thrown by the defendant revealed 18 small bags containing a total of 5.6 grams of crack cocaine. The contents of the two bags that

Cowans spit out of his mouth totaled .18 grams of crack cocaine.

In further testimony Rudnicki noted that the gun that was recovered had an obliterated serial number.  Rudnicki added that she has reviewed the police report of the defendant's prior assault and battery and gun charges arising from an event on April 23, 2004.  Rudnicki stated that the defendant's probation officer identified the victim of the assault to be Lashonda Pringle, a former girlfriend of the defendant.  Rudnicki stated that the police report noted that the defendant punched the victim in the face and that she had visible signs of trauma.

On cross examination it was established that Rudnicki was not present at the defendant's state arrest, nor has she worked with the arresting officers in the past.  Rudnicki identified by name the four BPD officers involved in the arrest of the defendant and the apprehension of Cowans.  Rudnicki added that the officers, who have made many arrests in the area, stated that it appeared that the defendant was waiting for someone while he stood by the T stop.

The defense called Wanda Rack ("Ms. Rack"), the defendant's mother.  She testified that she is a social worker and that she resides at 20 Warwick Street in Roxbury, where she owns her own home.  She added that she lives with her son and her fiancé, a detective who has served with the Boston Police Department for the last 28 years.  He has lived with Ms. Rack for the last seven

years.

Ms. Rack stated that she knows Lashonda Pringle. She added she is not aware of any restraining orders against the defendant.

In further testimony Ms. Rack testified that she was present at the defendant's arraignment in April and that she was aware that he was released on bail in the amount of $10,000. Ms Rack noted that she was also present when the defendant was arraigned on state charges in June. She added that the defendant spent two months in custody before being released on August 20, 2004. She noted that the defendant became employed after his August 20, 2004 release.

IV. The return of the Indictment in the United States District Court for the District of Massachusetts in this case establishes the existence of probable cause that the defendant committed the crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A). The government must prove by clear and convincing evidence that if released the defendant would pose a serious danger to any person or the community.

In contradistinction, with regard to risk of flight the court need only find by a preponderance of evidence that the defendant, if released, constitutes a serious risk of flight or failure to appear. The two different standards are used because

of the clear language expressed in the last paragraph of 18 U.S.C. § 3142(f) which states "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  Congress, by not attaching that language to the risk of flight clause, infers that a lower standard of proof is all that is necessary to establish the government's case.

    A. <u>Danger to the Community</u>

    This court first addresses the likelihood that the defendant, if released, would be a danger to another person or the community.

    The weight of the government's case against the defendant is strong.  The defendant was observed by officers of the BPD in what had all the hallmarks of a drug transaction.  When the officers approached the defendant he fled on foot and was ultimately apprehended hiding under a car on the second floor of a parking garage at some distance from where he was first seen.

    During the course of the foot chase through a busy area of the city the defendant was observed to discard a loaded semi-automatic firearm and a bag containing smaller bags of crack cocaine, which appeared to be packaged for distribution.  In addition, the police officers observed Cowans, who was seen

17

giving the defendant paper currency in exchange for something, spit two bags of crack cocaine from his mouth moments later.

This is not the defendant's first foray into drugs and guns. In 2002 the defendant was convicted of a drug charge and placed on probation until 2006. In April of 2004 the defendant was charged with multiple offenses involving guns and drugs. He was placed on bail and within two months he was arrested in connection with the present charges. Most significantly at the time of his June 2002 arrest the defendant was both on probation on a drug charge and on pretrial release on separate gun and drug charges.

The defendant's rush to return to drugs and guns suggests that he is unable to refrain from such dangerous behavior. The incident and subsequent chase took place in a heavily populated area of the city and could easily have ended in tragedy for an innocent bystander.

While the defendant's mother appears to be a sincere and highly responsible individual, this court does not believe that there are any conditions which can be fashioned to insure the safety on the community if the defendant is released.

Based on the totality of the evidence the government has satisfied this court by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any person or the community if the defendant is

released.

### B. Risk of Flight

Next, this court turns to risk of flight.

At this time this court does not find the defendant to be a risk of flight.

## V. Conclusion

The government has satisfied this court by clear and convincing evidence that no condition or combination of conditions of release set forth under 18 U.S.C. § 3142(b) or (c) will reasonably assure the safety of any other person or the community if the defendant is released.

Having evaluated the factors set forth in 18 U.S.C. § 3142(g), this court orders the defendant detained subject to the following conditions:

> (1) The defendant be, and hereby is, committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;
>
> (2) The defendant be afforded reasonable opportunity for private consultation with his counsel; and
>
> (3) On Order of a court of the United States or on request of an attorney for the Government, the person

in charge of the corrections facility in which the defendant is confined deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.


      /S/ Marianne B. Bowler
**MARIANNE B. BOWLER**
Chief United States Magistrate Judge