FILED
IN CLERKS OFFICE

2006 AUG 30 P 3: 11

U.S. DISTRICT COURT
DISTRICT OF MASS.

1    UNITED STATES DISTRICT COURT FOR
     THE DISTRICT OF MASSACHUSETTS

2

3

4  UNITED STATES OF AMERICA,          )
                                      )
5          Plaintiff,                 )
                                      )    Criminal Action
6                                     )    No. 04-10300-GAO
   vs.                                )
7                                     )
                                      )
8  CRANDALL RACK,                     )
                                      )
9          Defendant.                 )
                                      )

10

11

12              TRANSCRIPT OF SENTENCING

13

14     BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
               UNITED STATES DISTRICT JUDGE

15

16              United States District Court
             John J. Moakley U.S. Courthouse
17                  1 Courthouse Way
             Boston, Massachusetts  02210
18               December 1, 2005
                    2:38 p.m.

19

20

21                  *  *  *  *  *  *

22         SHELLY M. KILLIAN, RPR, CM, CRR
               Official Court Reporter
23         John J. Moakley U.S. Courthouse
           1 Courthouse Way, Room 3510
24               Boston, MA  02210
                 (617) 737-7117

25

ORIGINAL

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3  Paul R. Moore
    United States Attorney's Office
 4  John Joseph Moakley Federal Courthouse
    1 Courthouse Way, Suite 9200
 5  Boston, Massachusetts  02210

 6  For the Defendant:

 7  Gordon W. Spencer, Esq.
    1256 Park Street, Suite 104
 8  Stoughton, Massachusetts  02072

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S
2              (The following proceedings were held in open court
3    before the Honorable George A. O'Toole, Jr., United States
4    District Judge, United States District Court, District of
5    Massachusetts, at the John J. Moakley United States Courthouse,
6    1 Courthouse Way, Boston, Massachusetts, on December 1, 2005.
7              The defendant, Crandall Rack, is present with
8    counsel.  Assistant U.S. Attorney Paul Moore is present.)
9              THE CLERK:  All rise.  United States District Court
10   for the District of Massachusetts, court is now in session.
11   Please be seated.  For sentence, case of United States of
12   America versus Crandall Rack, which is docket number CR
13   04-10300.  Would counsel please identify yourselves for the
14   record.
15             MR. MOORE:  Good afternoon, your Honor.  Paul Moore
16   for the United States.
17             MR. SPENCER:  Good afternoon.  Gordon Spencer on
18   behalf of Crandall Rack.
19             THE COURT:  Mr. Rack appears this afternoon for
20   imposition of sentence on his conviction of possession of
21   cocaine base with the intent to distribute, that following a
22   trial.  I have a final presentence report.  The parties have
23   had an opportunity to review?
24             MR. MOORE:  Yes, your Honor.
25             MR. SPENCER:  Yes, your Honor.
```

1          THE COURT:  The report, of course, sets forth the

2    statement of the offense conduct.  And is there any issue with

3    respect to that that needs to be corrected or --

4          MR. MOORE:  Not from the government.

5          THE COURT:  -- or added to?

6          MR. SPENCER:  I don't believe so, Judge.

7          THE COURT:  The PSR also proposes a computation

8    under the guidelines of what would be the guideline range.  And

9    I note there were no formal objections.

10          PROBATION OFFICER:  Your Honor, yesterday I sent up

11    to you objections that were filed by the defendant.

12          THE COURT:  You did, did you?

13          PROBATION OFFICER:  I did.  And I can give you a

14    copy of it.

15          THE COURT:  How did you send them?

16          PROBATION OFFICER:  However it comes upstairs.

17          THE COURT:  Interstate mail -- interstate.  I mean

18    interoffice mail?

19          PROBATION OFFICER:  Interoffice mail.

20          THE COURT:  I didn't see them.  I'll take a look at

21    them.

22          (Pause.)

23          THE COURT:  Okay.  I think the -- I guess the

24    question is whether the proposed computation correctly

25    determines the base offense level according to the table in

1    line with the trial findings.  Do you want to address that?

2          MR. SPENCER:  Sure.  Judge, I would submit that

3    there is an inaccurate guideline calculation, and my objections

4    note this more specifically.  And, for the record, I believe

5    that the more accurate guideline should be a base level 14 with

6    a category level II.  The reason being is because what has

7    elevated the offense level up to a 26 would be a finding that

8    there was 5.89 grams of crack, cocaine base, in the possession

9    of Crandall Rack, a fact which was tried before this Court,

10   which was the finder of fact, a jury or judge, but it was

11   rejected beyond a reasonable doubt standard.  I'd submit based

12   upon Apprendi, as well as Booker, that that is the fact that

13   speaks to sentencing and the fact -- and at least my

14   understanding of Apprendi is that the sentence has to be

15   authorized by the verdict.  That being said, Judge, I would

16   submit that the verdict doesn't authorize this elevation in the

17   calculations of the guidelines.

18          THE COURT:  So what would your computation of the

19   guidelines be, a calculation of the --

20          MR. SPENCER:  It would be possession with intent to

21   distribute, which is a base offense level of 12.  And then we

22   add two points for possession of a dangerous weapon, which

23   would bring him to 14.  And then I believe he's a category

24   level II, which would bring him to 18 to 24.

25          THE COURT:  Why do you start with a level 12?

1          MR. SPENCER:  My understanding of possession with

2   intent to distribute starts at a base level 12, and then it

3   moves upwards depending on the weight of the drugs.  That's my

4   understanding.

5          THE COURT:  Can you give me a citation to --

6          MR. SPENCER:  I could cite <u>United States v.</u>

7   <u>Green</u> --

8          THE COURT:  No, but just under the guidelines.

9          MR. SPENCER:  Which would be the lowest level,

10  quite frankly, for the -- it starts at a base -- my

11  understanding of the guidelines, possession with intent to

12  distribute starts at a base level 12 and then moves upward in

13  increments of two based on the weight of the drugs.

14         THE COURT:  Okay, I see what you're saying I

15  think.  In the drug table the first appearance of cocaine base

16  is at level 12.

17         MR. SPENCER:  That's correct.

18         THE COURT:  I see.

19         MR. SPENCER:  And that's what I'm arguing.

20         THE COURT:  Is it your view that there's no amount

21  that should be attributed?

22         MR. SPENCER:  Well, no, Judge.  And I think it

23  would -- I would be misstating the evidence because we know

24  that there was an amount of crack cocaine or cocaine base.  The

25  argument is, though, is that the issue that spoke to the

1  sentencing factor was that it was over five grams.  That was

2  rejected.  So that now at this juncture, I think it would be

3  inappropriate to now say for terms or in terms of sentencing

4  now we're going to say there was, in fact, five grams when the

5  jury or Court verdict actually spoke against that.

6            THE COURT:  No, you don't have to say there was

7  five grams.  You can say there was something less than five

8  grams but close to it.  But anyway, let me hear from the

9  government.

10           MR. MOORE:  Your Honor, the -- the government

11  believes that quantity is a sentencing issue to begin with.

12  The standard is preponderance of the evidence.  The Court found

13  in the trial that above five grams was not proven beyond a

14  reasonable doubt, and I believe the Court was very specific in

15  the words it used on that occasion.  And my understanding of

16  Apprendi is it doesn't implicate minimum mandatories, only when

17  the statutory maximum is implicated is Apprendi involved in a

18  case like this, and then would have to be proven beyond a

19  reasonable doubt.

20           The government believes that the evidence that was

21  presented at trial, which included two weighings, one was 5.64,

22  one was 5.71, is sufficient to establish for the Court's

23  purposes that it was above five grams.  And I would accede the

24  one objection of the defense regarding paragraph 8, which goes

25  to the .18 grams, the sale which had just occurred, the person

1     spat out.  There was some testimony as to the substance that

2     was spat out.  And so -- but if the Court wants to toss that

3     .18 in its considerations, I don't particularly think it's

4     either here nor there because the evidence of two weighings

5     that were presented, even though I believe the Court may recall

6     the government's expert witness you described, I believe, as

7     somewhat bizarre --

8                    THE COURT:  I said that?

9                    MR. MOORE:  Yes, your Honor.

10                   THE COURT:  I do recall that I had little

11    confidence in her testimony.

12                   MR. MOORE:  Well, something like that.  I tried to

13    make that into a virtue.  But nonetheless, and given her

14    bizarre appearance in some ways, there wasn't really any

15    substantive attack.  In fact, the attack that was presented

16    through the defense expert's statistician was that it was just

17    simply too close and too good to be true that the actual

18    weighing could come so close to the estimated weighing.

19                   But in this case, the defendant is suggesting that

20    the Court simply say, well, we'll just drop down to .250

21    milligrams, which is the lowest that you could go to to get the

22    level 12.  I don't know where that figure comes from.  It's

23    just sort of reaching in the air like this.  And the government

24    would respectfully request that if the Court determines that

25    the amount is below five grams given the two weighings that

1    existed, how is it that the Court could simply reach some other

2    figure if there's something there, given the government's

3    proof.  And I would argue that there's certainly nothing to

4    suggest that the Court should drop down anywhere near .250

5    milligrams in this case.

6                I don't know if the Court wants me to address

7    anything else.

8                THE COURT:  Go ahead, Mr. Spencer.

9                MR. SPENCER:  I would submit that there was by way

10   of the defense case some indication that some appropriate

11   amount could be determined other than over five grams.  That

12   would be the testimony of Dr. Grimson, who I believe testified

13   that there was a margin of error of approximately 2.5 grams.  I

14   actually ordered the transcript.  I believe it's somewhere in

15   the courthouse -- I don't have it -- if the Court actually

16   needed the transcript to refresh its recollection as to what

17   Dr. Grimson testified to.

18                The margin of error would give the Court

19   conceivably another alternative weight.  We know again that the

20   verdict spoke and that it's not beyond a reasonable doubt of it

21   being over five grams.  If there's margin of error of 2.5

22   grams, that would put the weight at approximately 2.5, assuming

23   that you're not going margin of error over five grams, which

24   would be 7.5, Judge.  But I would submit that I don't think the

25   defendant should be faulted by the mere fact that based upon

1    the verdict there is no alternative weight.  The government

2    stuck to its guns with respect to we're trying to prove over

3    five grams, all or nothing.  They were unable to prove that

4    beyond a reasonable doubt.

5            I've read -- and, quite frankly, I think my efforts

6    on trying to get up to speed with federal sentencing laws has

7    been very arduous just because I don't do much federal criminal

8    litigation.  But I have read Apprendi, I have read Green, I

9    have read Watts.  I've actually read a couple of cases coming

10   out of the District of Massachusetts, district court cases, and

11   I believe that Booker supports now the proposition that

12   acquitted conduct, if it's going to be considered, should be

13   held to the standard implicated by the Fifth Amendment, which

14   is proof beyond a reasonable doubt, not preponderance of the

15   evidence.

16           I would also submit that to consider acquitted

17   conduct, and that's what we're talking about, to consider

18   acquitted conduct against Mr. Crandall Rack violates the spirit

19   of Apprendi in the sense that the jury's verdict authorizes, I

20   would submit, the sentence or in this case the Court's

21   verdict.  I think and I believe the government is recommending

22   95 months, which is almost ten years.  If the Court were to

23   adopt that guideline calculation, in effect it just eviscerates

24   what the verdict spoke to with respect to the weight of the

25   drugs.

1          THE COURT:  Okay, no.  I do think, as Mr. Moore

2     argues, there is a difference -- a significant difference in

3     the standards of proof at trial and at sentencing.  And it is

4     the case that -- well, the evidence -- the government had

5     evidence which might have persuaded a finder of fact by a

6     preponderance of the evidence but failed to persuade me as the

7     finder of fact by the requisite degree of certainty; that is,

8     that I had no reasonable doubt about the reliability of the

9     weighings.  And so that was the reason I was -- I found as I

10    did.  And it's not just an academic exercise between two

11    standards because there was a direct consequence of -- a

12    potential direct consequence of the finding beyond a reasonable

13    doubt in that it created the mandatory minimum.

14          So it was an important issue as to which the

15    government bore the burden of proof and, as I found, had not

16    sustained it on the evidence.  It's another question, I think,

17    what amount of illegal drugs should be taken account of in

18    deciding what punishment is merited given the crime of

19    conviction, which is possession with intent.  So I think the

20    questions are separable.  Not only technically in that there

21    are different burdens, but in the purposes of the two findings.

22          So I think that the proposed computation is the

23    correct one in the PSR, notwithstanding that he was not found

24    guilty of the crime of possessing more than five grams.  The

25    more-likely-than-not fact is that there were more than five

1    grams involved in the possession for purposes of scaling the

2    punishment to fit the crime.  So I will -- I will adopt the

3    computation as set forth in the guidelines.  That yields a

4    level 28, I believe, and a category II, which has an 87-108

5    range.

6              Now, of course, what makes that all permissible

7    under Booker is that it is not mandatory but advisory.  So that

8    to answer on the arguments made by Mr. Spencer, that's why

9    Booker does not invalidate it because the otherwise applicable

10   maximum sentence is still 20 years, as it is for all of the

11   offenses, any offense.  But anyway, so that's the range.

12             Now the question is under the statute, what is the

13   appropriate sentence to give effect to the statutory factors

14   under 3553(a), including among those factors what the

15   guidelines would propose as a proper sentence for this

16   offense?  So as to that, I'll hear your recommendations.

17             Mr. Moore for the government.

18             MR. MOORE:  Thank you, your Honor.  The government

19   would recommend a sentence of 87 months imprisonment, four

20   years of supervised release, a fine of $12,500 and mandatory

21   special assessment of $100.  Regarding the fine, I'm unaware of

22   any -- and forgive me if I haven't seen something in the

23   documents -- but I'm unaware of any representation that the

24   defendant's unable to pay.  And correct me if I'm wrong in

25   terms of the defendant's financial status.  I've seen the job

1    history but I believe -- I can't make any representation.  I

2    think that's the defendant's responsibility.  If the Court

3    finds the defendant is unable to pay, the government would

4    agree that no fine's appropriate.  And a special assessment of

5    $100.

6            THE COURT:  Mr. Spencer.

7            MR. SPENCER:  I would submit that, and my client

8    specifically is requesting, a sentence of 24 months be

9    imposed.  We know that's a remarkable disparity with respect to

10    what the government is recommending, but we do believe that 87

11    months is greater than necessary to achieve the goals of

12    sentencing in this purpose.

13            Judge, you look at his PSR, you know that he's 25

14    years of age.  And for the first 22 years of his life, he's

15    never had a brush with the law.  From the ages of zero to 18 he

16    basically lived all of his life with his mother, who is present

17    in the courtroom and who, as you know, testified in this case.

18    He's a graduate of high school, and at the age of 18 back in

19    1998 -- and I think it's fair to say that at least at that

20    juncture we could have assumed that Mr. Rack was on his way to

21    a productive member of society -- he had no juvenile record to

22    note, no criminal record or adult record at that present time.

23    He also began employment working two jobs during his 18th year,

24    one at Tufts and the other one at UPS.  Then that continued on

25    throughout his adult life until 2002 when, again, he had other

1    jobs and he wasn't involved in any criminal activity.

2           We know then in 2002 his grandfather suffered a

3    massive heart attack and was paralyzed as a result, requiring

4    him and his mother to contribute to his care basically around

5    the clock.  It seemed from that point on there was a change

6    that you noticed, at least with respect to his exposure to

7    criminal activity with Mr. Rack.  We saw that he picked up a

8    couple of cases in the district courts, one for marijuana where

9    he received a continuance without finding.  And then he picked

10   up another charge out of the district court, which was

11   ultimately picked up by the federal government, and he was

12   indicted.  There's another pending matter, and I can say

13   because I represent Mr. Rack on that case that is a matter that

14   is involving possession of a firearm.  That matter was

15   dismissed as of two days ago out of the Boston Municipal

16   Court.

17          So as far as where we stand presently, Judge,

18   Mr. Rack is a first-time, convicted felon, I think, for all

19   intents and purposes.  At the time of this arrest, he had no

20   prior criminal convictions.  This is not a situation where this

21   person's been given chance after chance after chance, where he

22   has been exposed to the criminal justice system and just

23   refused to get in compliance, refused to fly on the straight

24   and narrow.  I would submit that we have a situation where --

25   and I've spoken to Mr. Rack about this and he says he wakes up

1    every day in his cell and he wonders and he looks at himself

2    and says why am I here, this is not me, I basically don't

3    belong here. Obviously it took a federal indictment for him to

4    wake up to this fact, quite frankly, your Honor.

5              But the point is, and I think I can say in my

6    humble, feeble opinion, that I believe Mr. Rack, that he does

7    truly believe that he doesn't belong here, that he's better

8    than that. And I think that a sentence, a stiff sentence, by

9    the way of eight years for a first-time, convicted felon

10   doesn't necessarily have to be, meaning it's not a necessary

11   sentence in order to ensure that this person has, in fact,

12   accepted responsibility and would be an appropriate

13   deterrence. I would submit that something along the lines of,

14   again, 24 months, your Honor, would be more than sufficient.

15   And then obviously supervised release after that fact to

16   achieve the goals of sentencing in this case.

17              I would submit that Mr. Rack has accepted

18   responsibility by way of -- although he did take his case to

19   trial, but he would like to address the Court and tell you that

20   he did, in fact, accept responsibility for what he felt was

21   something he never should have gotten involved in in the first

22   place. You learned from the trial that he was shot in the year

23   of 2004, which we're not saying serves as any excuse, your

24   Honor, but I think Mr. Rack got himself intertwined in a

25   culture that started contributing to his demise. Fortunately,

1    I think we've caught him early because I think Mr. Rack has

2    changed since this conviction.

3                And, again, 85 months, Judge -- 87 months is

4    something I think very extreme and very severe in light of the

5    circumstances.  We have a situation where there was one alleged

6    transaction that took place on the streets of Boston involving

7    an undefinable amount of cocaine base.  I just think -- and I

8    know that the guidelines are advisory now and I think that -- I

9    can only say that I listened to the prior sentencing hearing

10    and I heard about it -- I'm not trying to compare those facts

11    directly against these facts, but I did hear about a person

12    receiving 12 months.  And that was actually authorized under

13    the guidelines for seven separate drug transactions where we

14    saw evidence of a persistent participation in a life that spoke

15    to danger to the community.  What we have here is one isolated

16    drug transaction that involved, again, an undefinable quantity

17    of cocaine base.  And now Mr. Rack, first-time offender, is

18    looking at 87 months.  I think that a period of 24 months with

19    supervised release would be more appropriate in these

20    circumstances.

21                THE COURT:  Mr. Rack, you have the opportunity to

22    address me before I decide on the sentence.

23                THE DEFENDANT:  How you doing, Judge O'Toole.

24    Basically I would like to say I've been convicted of carrying a

25    gun and selling cocaine, which I can't deny.  I did make a sale

1   and I did have a gun, but I never had a gun to protect, never

2   had a gun to harm anyone, just basically to protect myself.  I

3   was just a victim of violence.  And I know it seems crazy to, I

4   guess, to basically be a victim of crime and then turn to

5   crime, I know it seems crazy, but only being in my shoes you

6   can understand the situation.  I had -- 87 months, it is harsh

7   but if that's what I will get, I have no choice but to take

8   that.  But I just -- all this is overwhelming to me as much as

9   you.  My crime I don't think in my eyes is a federal crime

10  really, and for me to get so much time for so little is, in my

11  opinion, is outrageous.  But I guess it's the law.

12          But basically what I'm saying is I am sorry for

13  everything that happened.  I never meant to hurt nobody.  But I

14  guess at the time I felt like what I was doing was right, but

15  now I see it wasn't.  But only thing I could say is I'm sorry

16  and I never meant for things to be like this.  And whatever

17  your decision is, I have to live with that.

18          THE COURT:  Under the sentencing statute, Section

19  3553(a) the task is to impose a sentence that is sufficient but

20  not greater than necessary to reflect the seriousness of the

21  offense, to promote respect for the law, provide just

22  punishment, afford adequate deterrence, protect the public and

23  so on.  And the guidelines, considering some of those same

24  factors, have a method of proposing a range of sentence by

25  taking account of a number of factors.  And, in particular, in

1    a drug case like this, among them are two very significant

2    factors, which is the quantity of the drugs and the presence of

3    a firearm.

4              The general theory of the guidelines drug table is

5    it's more serious to possess greater quantities.  That's not an

6    irrational thought.  The guidelines also -- and Mr. Rack in

7    this case was acquitted of the accusation that he carried the

8    firearm during and in relation to the drug crime, but there's

9    no question he still possessed a firearm.  His record indicates

10   a prior event in the BMC, I think it was the BMC, where he

11   possessed a firearm.  That's certainly worth taking note of.

12             Because the drug table provides progressive

13   escalation by the quantities, it can -- let me start that

14   sentence again.  The drug's reliance on progressive staircasing

15   by reference to the quantities can be useful.  It recognizes

16   the right principle, but it also can be overly mechanical.  And

17   the assessment of how serious the offense is by reference to

18   that single factor alone, which is the main driving factor, I

19   think can result in something that is perhaps more than

20   sufficient and greater than necessary.  And I think that would

21   be the case with an 87-month sentence here.  I don't think 24

22   months adequately accounts for the offense here, though, either

23   and I think an appropriate sentence will be a 60-month

24   sentence.

25             Because it is a serious offense, it is an offense

1  by someone who has a history, although relatively minor, of use

2  of a firearm and I think that will be appropriate.  Given

3  Mr. Rack's age, I think what will effectively be another three

4  and a half to four years incarcerated will give him an

5  opportunity to confirm what he tells us, that this has gotten

6  his attention and his life will change.  I think that's a

7  period that will give him that opportunity but will not overdo

8  it, as I think an 87-month sentence would.

9         I think that the -- as I say, I think the

10  guidelines have to be respected and considered carefully in

11  these matters because I think they do try to take account of

12  the sentencing factors in the statute.  Every case has to be

13  addressed on its own terms, and the general adequacy of the

14  guidelines, including the drug table to predict an appropriate

15  range, does not mean it will always be the case.  And I think

16  that it's smart in this case to go slightly below what the

17  table will require.

18         MR. SPENCER:  Judge, may I be heard?

19         THE COURT:  Go ahead.

20         MR. SPENCER:  Just for the record, I just wanted to

21  clarify the Court's ruling with respect to the finding of the

22  weight of the drugs.  Was it the Court's ruling that by a

23  preponderance of the evidence the Court found --

24         THE COURT:  In excess of five grams.

25         MR. SPENCER:  Thank you.

1         THE COURT:  For the purposes of the guideline

2    calculation only.

3         MR. SPENCER:  Okay.

4         THE COURT:  Mr. Rack, if you'd stand, please.

5         Pursuant to the Sentencing Reform Act of 1984, upon

6    your conviction of these -- of this offense, it is the judgment

7    of the Court that you be and you hereby are committed to the

8    custody of the Bureau of Prisons to be imprisoned for a term of

9    60 months.  Upon your release from imprisonment, you shall be

10   placed on supervised release for a term of four years.  Within

11   72 hours of your release from the custody of the Bureau of

12   Prisons, you shall report in person to the district to which

13   you have been released.  Based on the financial circumstances

14   disclosed in the PSR, I will not impose a monetary fine.

15        While you're on supervised release, you shall

16   comply with the following terms and conditions:  You shall not

17   commit another federal, state, or local crime.  You shall not

18   illegally possess any controlled substance.  You shall refrain

19   from the unlawful use of any controlled substance and shall

20   submit to a drug test within 15 days of your release from

21   imprisonment, and at least two periodic drug tests thereafter,

22   not to exceed a total of 104 tests in any given year, all as

23   may be directed by your probation officer.  You shall submit to

24   the collection of a DNA sample, as directed by the probation

25   office.

1       While you are on supervised release, you shall

2   comply with all the standard conditions that pertain to that

3   status.   Those conditions are set forth in the United States

4   Sentencing Guidelines at Section 5D1.3(c) and they're

5   incorporated by reference.   You're prohibited from possessing a

6   firearm, destructive device, or other dangerous weapon.   If

7   directed to do so by the probation office, you shall

8   participate in a program for substance abuse treatment or

9   counseling and may be required to contribute to the costs of

10  any such program based on your ability to pay or the

11  availability of third-party payment.   There is a mandatory

12  special assessment in the sum of $100, which is due forthwith.

13          MR. SPENCER:   He wanted me to request the drug

14  program.

15          THE COURT:   While institutionalized?

16          MR. SPENCER:   While institutionalized.

17          THE COURT:   I'll add that recommendation to the

18  Bureau of Prisons.   I don't know if the 500 hour -- or with the

19  firearm charge it may not -- actually, it's not a charge.   He

20  was acquitted of the firearm possession.   He may be eligible.

21          PROBATION OFFICER:   He may be eligible.   His drug

22  history isn't such as some of the other defendants, but he may

23  be eligible.

24          THE COURT:   The recommendation can be for the

25  500-hour program?

1           PROBATION OFFICER:  Yes.

2           THE COURT:  I'll add that recommendation.

3           MR. SPENCER:  Thank you.

4           THE CLERK:  Mr. Crandall Rack, you have the right

5    it file a notice of appeal in this case.  If you do wish to

6    file an appeal, you must file it within ten days from the date

7    the judgment is entered.  If you cannot afford an attorney to

8    file the appeal on your behalf, you may request the clerk of

9    the Court to file the appeal for you, and I will do so.  Do you

10   understand, sir?

11          THE DEFENDANT:  Yes.

12          THE COURT:  We'll be in recess.

13          THE CLERK:  All rise.  Court will take a short

14   recess.

15          (Adjourned, 3:12 p.m.)

16                    - - - - - - -

17                  CERTIFICATION

18          I certify that the foregoing is a correct

19   transcript of the record of proceedings in the above-entitled

20   matter to the best of my skill and ability.

21

22

23   _____    _____

24   Shelly M. Killian                Date

25   Official Court Reporter